Your second case is Elegant Massage, LLC v. State Farm Mutual. Ms. Sarchio, whenever you're ready. May it please the Court, Christina Sarchio on behalf of Appellant State Farm. Your Honors, State Farm stands before you today appealing the only case in the country where a court has certified a class of business insurance policyholders for purely economic losses sustained as an alleged result of government shutdown orders issued because of the novel coronavirus. The reason that the District Court stands alone is because state and federal courts alike have dismissed these kinds of lawsuits as a matter of law, finding either that there was no accidental direct physical loss or that there was a virus exclusion precluding coverage for both. As was the case in Uncork, more than 140 appellate decisions, state and federal courts alike, including from the 10 federal circuits that have had occasion to visit this issue, have affirmed these dismissals. So we're not here on a motion to dismiss. Yes, Your Honor. We're here on a class certification question. We can only look at the merits in a very limited view. I just wonder, where are you at State Farm if we go your direction? What happens? You then lose the class certification and it just, I don't know, it seems like there's a conundrum here. I'm thinking about this. The motion to dismiss, I'm sure, is going to show up for a judgment on the pleading or something beyond now. So how do we consider, to the extent, the merits? What would be the impact of doing so on the question of class certification? Thank you, Judge Wynn. It's a good question. And Your Honor, I have two paths to be able to review both the underlying order on the class certification decision, Your Honor. First and foremost, clearly under 23F, where the court can undertake a merits analysis and evaluate both the claims and the defenses in determining whether the district court was correct in finding commonality and predominance in the class certification order. This was done, Your Honor, looking at the EQ2 production case, the Lionheart case from this court, where this court is able to evaluate the merits when a class certification decision is manifestly erroneous and virtually certain to be reversed on appeal, the court can evaluate the merits to see if there's a legally plausible theory of the case. That's one way, Your Honor, can look at this case, is through purely a merits analysis on 23F. But the other option- And it would deal with which prong of the class? Yes, Your Honor, specifically, we are alleging that the district court got it wrong on the commonality and also the predominance of common issues. Those are the two factors and prongs that we're asking the court to review specifically. What does the merits of the district court's interpretation of the contract have to do with those issues? I mean, because it's clear that their allegation is that your client interpreted the contract in the same way for all insureds and had a scheme, apparently, to deny claims based on its view of the limits of the insurance policy. That may be right, it may be wrong, but that seems like the overarching common question. You disagree, you think the district court got that wrong, but you couldn't appeal the order on the motion to dismiss, and now you're asking us to take a bite at that issue at this stage. And like Judge Wendt, that just seems a little odd to me. Yes, Your Honor. And the court can also exercise pendant appellate jurisdiction in evaluating this case, Your Honor. And I can address that in a minute. Sticking to your question on the 23F request, what we argue, Your Honor, is that the district court got it wrong at the motion to dismiss stage. That there was an error of law in finding that the plaintiff had plausibly alleged direct physical loss when it was just purely an economic loss because the business was shut down, according to the plaintiff, because of the government shutdown orders. And the district court also got it wrong that the virus exclusion did not apply. The district court then carried over that error of law into the class certification decision. And so it became part and parcel and was underlined. But that happens in every case. I mean, that's the problem. If the district court denies a motion to dismiss in a class action not involving insurance, the merits of that decision carries over into the class certification. But there's still the common question regarding the interpretation of the policy, which applies to all of these insurers. And again, I'm not suggesting that the district court got it correct. I have some doubts about that. But the procedural posture is just troubling to me. Am I making myself clear? You are, Your Honor. And admittedly, this does not come up very often. It certainly came up in Scott v. Family Dollar Stores case, where the court was able to use the 23-F petition to also go back and look at a motion to dismiss ruling, although there the issue was the court reversed the denial of the motion to amend the complaint. But it doesn't come up often. But, Your Honor, to answer the question on the commonality and predominance, the problem is when you have the legal basis for moving forward with the case is manifestly erroneous. It's commonly wrong, right? But it's still a common answer to a question that... And what we're alleging, Your Honor, is that the district court evaluation of commonality, all the court did was look at the fact that State Farm had a common policy, that the government issued orders that applied to the class, and that State Farm denied claims related to claims for partial or full shutdown as a result of the order. But that's not enough, and that's what we're alleging the court got wrong on the commonality issue. So you're saying that the district court's interpretation of the policy term direct fiscal loss destroyed the commonality? Is that essentially your case? Yes, Your Honor, because you've got... The court did not consider the fact that each class member would still have to prove coverage, and that the coverage was not excluded. And by defining coverage here as that the plaintiff had satisfied accidental direct physical loss, and getting that wrong, and then proceeding with it, moving forward with the case, that was an error of law that was carried over into the class certification decision. And what the court considered, Judge Diaz, going back to your question, is that these were very... The court took a very broad view of the questions on commonality. The court didn't consider what would be the common answers on commonality. What's the liability here? And that's where we are saying that the court was too general in finding commonality here. And so, Your Honor, not only on the issue of commonality, but also predominance of common issues. What you have here is 111 putative class members. Each of them closed their business for varying reasons, and that's something that the district court... It's not that the district court didn't consider it, because we can't argue there wasn't an analysis done, but that the district court disregarded it. When you've got so many different kinds of orders, and that different orders impose different obligations on companies, you've got to look at each case individually. You've got to do a case-by-case analysis and determine whether there's a predominance of common issues. And what we're arguing, Your Honors, is that there's no plausible way that that can be done on a common-wide basis here. So separate this discussion on commonality and predominance. I mean, predominance, you talked about causation, and you talked about damages. That seems to go to predominance, not commonality. Commonality just requires a common question. Chief Judge Beatt sort of put it in that way, but a common question. So aren't you really talking predominance? We're arguing both, Your Honor, and they do overlap, but relying on the EQT case, Your Honor, where the court in that case, the district court in that case, relied too much on the fact that there were uniform policies. The court said, well, all the policies are the same, and therefore there's a common issue here, and did not look further than that. It's not just a common question, Your Honor. It's whether there's evidence that suggests a common answer. And what we're alleging here is there is no evidence that suggests a common answer when you've got so many individual businesses that were shut down for different reasons, some of which having nothing to do with the orders, but some of them very particular. In this case, in particular, for instance, Elegant Massage shut down before any orders were issued, and then never resumed operations even though the orders were lifted and the plaintiff could have resumed operations. And so here, what you've got is the court generalized in finding a common answer, and under EQT, the court needed to do more than just rely on the fact that there was a common policy. In EQT, was there a common answer? There was not, Your Honor, from my understanding. The court there had to consider whether... So in this case, there could be a common answer, don't you think, where the policies could cover anything that's related about COVID? But the problem, Your Honor, is that you have to assess each individual claim to see if it meets a covered cost of loss. And if you look at just the Elegant Massage letter, for instance, we included it in the record under JA-289, there was specific reasons given why coverage was denied. The fact that she had closed her business before the government shut down orders, the there was no damage to her property, that her property was not uninhabitable, inaccessible, or dangerous to use, and the fact that she had a virus exclusion. Those were the specific reasons given to just one of those class members. You would have to do that for each and every one of the 111 class members, Your Honor. And that's why we're suggesting that there is no common answer here, and there's a predominance of common issues... There's a predominance of individual issues. You'd have to conduct mini-trials. So the fact that the question is incorrect, that just, is there a common policy? That's not the question that should have been asked. What's the proof necessary to show that there's a covered cost of loss? And it varies case by case. And we cited some of those examples in our briefs, for instance. Restaurants could remain open for takeout and delivery, not to serve people, but for takeout and delivery. Yet a number of restaurants submitted claims saying, well, we're in a mall, the mall closed, and we're going to close too, and we're just not going to provide takeout and delivery services. That was a choice they made. They are a class member, because the government shutdown orders limited their ability to function. But again, they made the decision to shut down. They've submitted a claim form. And these are the kind of analysis we would need to do for each individual claim. It just seems like there are some general common questions, yet I'm feeling your point that there are individual questions here on breach of contract, on injury, questions of causation. And you say that defeats the predominance. Yes, Your Honor, we are. Certainly there are some common questions, but the question is, is there an ability to present class-wide proof? Is there an ability to, in one fell swoop, could you answer all those questions? And what we're saying is, you can't. You really have to look at each case individually to determine whether it was a covered cause of loss. As you are talking, as you're describing the analysis, it struck me that, then why do we have to reach the merits of the contract interpretation? It seems like you're arguing even if their interpretation of the contract is correct, this is not suitable for class certification because of the reasons you just explained. Your Honor, there are a number of errors in this class certification order and in the motion to dismiss order that would warrant a reversal. What we are asking the court to do is not just to reverse the class certification order, but to order the district court to dismiss the case, as was done in the Eighth Circuit's In Re-State Farm case. The reason, Your Honor, is because- Let me make sure I understand. That was a case with a class certification case only? There's no motion to dismiss appeal? And that court sent it back to do both? Correct, Your Honor. How? The issue wasn't before the court. It's clear you can't decide the merits and decide a class certification for that purpose. It was under a Rule 23F analysis, Your Honor, in that the court got it wrong at the motion to dismiss the case. It was not a COVID case, but it was that the court got it wrong. There had been a motion to dismiss in that case. There had been, yes, Your Honor. It's not here. You don't have that here, do you? No, no. The case was being reviewed on a Rule 23F petition, and the court went further than that and not only reversed class certification, but then ordered dismissal of the case. This court did something similar- But the remedy being sought here, this appeal is about a class certification. We need only determine whether the class was properly certified. That's all we need to do, right? Respectfully, that is all you can do, but we're suggesting more is needed in light of the fact that the district court opinion is such an outlier in its finding that accidental direct physical loss was satisfied, and it would be in contravention of this court's decision- That's another coursework. And that's why I started out and says, so the practical effect, if we rule in your favor, is to undo this class action. You say there are individual actions, determinations of causation, breach, damages, I guess, that sort of thing. And so, don't you then have to deal with every one of them individually? I mean, if you had them as a class and you had a dismissal, wouldn't that be different? Yes, Your Honor, we would be back to square one, which would be a tremendous waste of judicial resources then. Which is why we're asking the court not just to reverse class certification, but to order dismissal to be consistent with uncork and consistent with all the other circuits- But what are you dismissing? Would you be dismissing the class action that we say you've asked us to reverse, or what would he dismiss? The case altogether, Your Honor. Which case? The underlying- It's not a class, so which case is it going to be? The elegant massage versus state farm case. Just that case is all he would dismiss. All the rest of them, still good. No, we would ask for both, Your Honor. How? They're not part of the action. You just told us to decertify the class. This court can find- a class has been certified, so this court's opinion- You're telling us to undo it. So you said, undo that class, and then order them to dismiss this case. And the case we're asking to dismiss would be elegant massage. So what happens with the rest of the cases? Your Honor, the court can reverse and instruct the district court to dismiss the case based on a manifest error of law. And the error of law is finding that accidental direct physical loss was satisfied, and that the virus- In other words, reach the merits in this case of class, is what you want us to do. Yes, Your Honor. And I don't know, but that little case you mentioned that has ever done that. Not for that purposes. You don't get to the merits in a class certification issue before the court only. This is not a motion to dismiss. It's not a judgment on the pleaded. But Your Honors, can exercise pendant appellate jurisdiction as well. And I see I'm out of time. I have reserved some time for rebuttal. Well, let's talk about pendant appellate jurisdiction when you come back. I'm not certain she'll be here. Thank you very much, Ms. Arcio.  Good morning, Your Honors. Melissa Yates on behalf of the Department of Justice. On behalf of Appellee's Elegant Massage and the class, may it please the court. We're here today on a Rule 23F appeal, a narrow rule that allows this court to review on an interlocutory basis class certification decisions. And the issues that are related to class certification in this case are very straightforward. The question before this court is whether the district court abused its discretion when it certified a narrow class of Virginia small businesses who are all issued identical form insurance policies by State Farm providing business owners coverage, were required to suspend their operations under orders issued by the Virginia governor, and were subject to State Farm's erroneous uniform interpretation of the policies and blanket denial of business interruption claims. The answer to the question of whether the district court abused its discretion must be no. In fact, the district court performed a rigorous Rule 23 analysis and issued a well-reasoned, thorough opinion. So the great weight of authority does seem to be against you, ultimately, on the question of direct physical loss. What do you make of that? I know we're limited in terms of the issue here, but where is this going to go? Well, I would respond to that in a number of ways. First of all, I think it is very important for the court to understand that we're here on Rule 23F, and that's a very limited rule that does not allow... Just ignore what is out there. The biggest storm you ever see that's going to end this case in everything I'm looking at. And we just deal with class certification here? The case that was alluded to here, you're familiar with that? The one that the co-counsel, your counsel on the other side, said it not only dealt with the class certification, it also had jurisdiction over the other issues. Is that something that we ought to do here? No, that's not something that you should do here. I have looked at that case, and in that case, the 8th Circuit did not consider proper appellate procedure at all. It wasn't discussed. I didn't see whether there were any arguments about... The 8th Circuit was just blatantly wrong, is what you're saying? It was blatantly wrong, and it didn't discuss Rule 23F or appended appellate jurisdiction, which is what this court needs to do here. State Farm already attempted to... Can I follow up on Judge Wynn's question? Because I think he's getting at the practical consequences of allowing the class to move forward. He has described the great, almost uniform, I think, uniform weight of authority that says that these kinds of policies were never intended to cover injuries and damages relating from a once-in-a-century pandemic. Now, if we were inclined to agree with that, why would we allow this class to go forward and spend all this time and money and resources only to ultimately dismiss the case when it gets here at some form, either at summary judgment or trial? That doesn't make a lot of sense. First of all, those cases do not apply Virginia law. They did not consider U.S. Airways, which is Virginia law on this matter. But the actual language that was at issue in Uncork is the same as the actual language at issue here, is it not? Less physical loss? That is correct. But in Uncork, this court was looking at West Virginia law, and in particular, the Murray case, which was a property insurance case that talked about direct physical loss in that context. In Virginia, we have a circuit court case in U.S. Airways. Right, but that's a circuit court that is one of how many circuit courts? Thirty-five or so? They have no precedential authority in Virginia whatsoever. It is the only Virginia law that's spoken on this matter, and the facts of U.S. Airways are nearly... Right, there's no precedent then. ...nearly identical to the facts here. Yeah, the key thing is when you say a circuit court law, we don't follow a circuit court law. It's for that circuit, maybe for that one case. Sort of like the district court here, this goes back. It won't establish precedent in terms of how to handle these cases if we say go back and do it just for massage. So, you know, the Supreme Court of Virginia, the lineage, at least sets forth the law in support of that state. So when you look at uncourt, and you look at Virginia law, West Virginia law, what's the difference? It looks like it's exactly the same thing. I haven't seen any Virginia law that looks like the Murray case. I'm talking about the language that's being interpreted there. It's in there. It's the same language in the Virginia side. What's the difference? Correct, but what the district court found here, it was a motion to dismiss, number one, so the district court was looking at whether there was a plausible interpretation of the policy. Whether plaintiffs had pled plausible facts that could support a breach of contract claim here. And what Judge Jackson found is that the fact that the orders said that the properties were dangerous to use under U.S. Airways, there is a plausible interpretation of the policy that says this is a covered cause of loss. What is the definition of direct physical loss? Is the definition that's set forth in court, would it be controlled in here? What's the difference? I mean, it looks like it's the same language. The same, that's all across the country in different policies. What would make you think that Virginia is going to have something different in there? Well, I would go back to the fact that when there was the order in U.S. Airways that was grounding flights and prevented access to the property and the inability of U.S. Airways to use that property to serve its customers, it's the same argument that we make here. The orders held that the property was dangerous to use, it prevented plaintiffs from accessing their property to perform services for their customers. And so that is a direct physical loss. Made all across the country in other cases. It's the same kind of argument. They were, Your Honors. But I would like to go back. I don't know of a case in which that is prevailed. They were, Your Honors. I would like to go back to the court's jurisdiction today because the court's jurisdiction over the motion to dismiss issue and the merits issue. Probably the best posture you can take on this and the question. But, you know, we'll have to resolve it. I mean, it's just a practical thing here. You don't want to keep doing something that is going to go one way or the other. And I'm not saying, just absolutely. It really seems on point in terms of, and we can only go so far on merits on it, but the issue of predominance here. The issue of predominance, the question being, notwithstanding uncourt, aren't there indications that there are individual claims that will affect breach of contract, damages or things of injury that would defeat or at least indicate that you don't fit that predominance problem of a class. I keep getting that word common. I don't want to get that predominance. I do want to quickly, I will answer your question. I want you to answer that question right now because I think that's the question that's concerning me. But if you want to go and argue something else, go ahead and argue. I think you ought to argue what I want to hear. I will specifically answer your question. There are no predominating individualized issues here. The key word is predominating. And so when there are form contracts like there are here, this court in Warder v. Dixie, this court and many others, Graveyhurst and Comer, certified breach of contract, breach of insurance contract, cases like this because the core questions that predominate relate to the proper interpretation of the policy and how the defendant interpreted that policy and uniformly denied claims. Those are clearly the core common questions in cases like that, in cases like this. What about the issue of period of restoration? Sure. I haven't heard you talk about that, how that relates to this because State Farm did put that at issue. Right. So the individualized issues are purported individualized issues that State Farm raised. They went through 111 claims files and they came up with five or six where they said, maybe we have some individualized issues. The majority of those claims files, the businesses were not required to close under the orders. They're not in the class. That's a complete red herring. One or two of them had a different closure reason in addition to the orders. That is not a predominating individualized issue. That can clearly be looked at by the jury if your claim file said there was more than one reason to close. The order plus something else, you can either be excluded from the class or the jury can make a factual determination as to whether you can recover and whether there is breach here. So the individualized issues are complete red herrings. This is just like every other form contract case where there's been form. What about period of restoration? Period of restoration is also a common question. How could that possibly be? Appellees have argued there is one definition for the period of restoration and that is when the orders were lifted, when these small businesses were able to resume their business operations. Whether that's right or whether that's wrong is the same for all of these businesses. I understand State Farm disagrees with that. They can raise that on summary judgment. They can raise that at trial, but it's a common question and it will be answered in the same way for everyone. To the extent some of these businesses were able to open a little bit earlier than others, period of restoration argument is exactly the same. That simply goes to their damages, whether they were closed for two months or three months under the orders. That's simply an input into Mr. Meyer's class-wide common damages methodology. And under Gunnell's, that does not defeat certification. I want to ask a question that's interesting to me. You asked for certification on 23B2. How did it get to B3? We had always asserted a B2 and a B3 class. We initially had moved... We started out with B2. Correct. We asked for a B2. And then I'm wondering how did it get to B3 and why wasn't it asked for in the first instance? We asked to bifurcate the B2 and the B3 class because we had moved for a declaratory judgment on the B2 class and wanted to deal with damages separately. The court decided not to bifurcate. And so the B2 class was certified, but it was certified... This court found that it was certified prematurely because there was no briefing on that. And so when we went back, the declaratory judgment did not move forward. And we moved and fully briefed a B3 class. And the court looked at that and used his wide discretion to affirm certification here and did a rigorous Rule 23 analysis. So B3 is before us now? The B3 appeal is before us. So if you don't get that, you're going back and trying to get the B2? That's funny, but you just told me you got it. No, Your Honor. I think if the B3 class does not proceed, which it should given the common questions that predominate here, that would likely be the end of the certification process in this case. Okay. I did want to address pendant appellate jurisdiction, if I may. Let me ask you about individual discovery. Will there be individual discovery on damages, restoration damages, and things of that nature? There has not been individual discovery on damages yet, because State Farm has refused to give us the businesses' names. We attempted to get the class members' names. Even for notice, after the class was certified, State Farm protested, and the district court ordered that the names would be provided. And at that point, State Farm appealed to this court, and the court stayed that notice proceeding. There is no individual investigation that needs to take place in terms of liability for these class members. Once we determine their membership, it's only damages inputs that would go into the class-wide formula, and we would get that after the names are released and notice is given. I do want to talk about State Farm's position that there are individualized issues. State Farm says, you have to look at the specific facts of every single business. This will turn into many trials. That is completely inaccurate. They have the claims files. They went through the claims files, and what we found out through discovery in this case, what's interesting is they're trying to argue about motion to dismiss, but we're past that. We've had discovery. We're at summary judgment. We're at trial. And what we've seen in discovery is that State Farm had presentations. Their employees gave testimony and depositions saying that every one of these class members was treated the same. There was no investigation into the individual facts or circumstances for causation. The same thing that State Farm argues is essential and creates individualized issues. They didn't do that, but now they're saying it has to be done. Instead, they denied everyone immediately. What would be the next procedural step either way? If we say no class or we say class, when it goes back to trial, the next motion you're going to see is what? Summary judgment? A motion for summary judgment, Your Honor. We are prepared to file that. The difference of that would be if we don't find there to be a class, you then just be representing a size. It wouldn't be individuals. And then the motion for summary judgment comes up, it'll just be for that one, right? That's correct. But if we say there is a class and it goes back, then the motion for summary judgment affects everybody in the class. That's correct. So if the other side is so confident they can get on the merits, did you see my question earlier? Why would you want there to be a class not certified if you could get rid of everybody? Am I missing something on that? No. 33 years since I practiced law on that side over there, but there's still some practical things I think about. It's called making money. I can't figure this one out. No, Your Honor. I understood your question earlier when you were speaking with State Farmers Council, and that's correct. If the class is decertified, then summary judgment would only apply to elegant massages claim. It makes much more sense for summary judgment to be determined based on the entire class. Frankly, it would give State Farm more protection because these claims have been told, and these individual businesses, if the class is not certified, can bring individual claims in court after this process. They want us to do more. They want us to say versus class certification and instructed judge to then dismiss. My question was, if we do the first, the action first, doesn't that just affect massage, or does it affect the whole class? The 8th Circuit, I got to go really read that one again. I just can't figure that one out yet. How would that work? I will tell you there is no analysis of appellate procedure in that opinion. Would it only just affect massage in your view? Yes. If the class is decertified, the motion to dismiss opinion only affects plaintiff. That's correct. If we can do it all together, maybe while it's still class, go ahead and dismiss it. That doesn't seem to make sense to me. That doesn't work procedurally. This is an interlocutory appeal for a reason. It focuses on class certification only. State Farm moved for a 1292B appeal. The district court denied it. If you look at the Mitchell v. State Farm case in the 5th Circuit, there was a section 1292 appeal that was certified by the district court as well as a 23F. That's why in that case, the court, it's not a COVID case, but it's another State Farm case. The 5th Circuit found that they could address both issues because there was a proper procedure. There was 1292B certification as well as 23F. And the court there found State Farm's terms were ambiguous. Different terms in here, but they were ambiguous. And it affirms certification of the class because the policies were identical and State Farm's conduct was identical like it is here. But they had the ability to do that because State Farm followed the proper procedure. Here, 1292B has been denied. We're only dealing with a 23F. There are no individualized issues that predominate here. Common questions regarding to contract interpretation and State Farm's uniform conduct. They have set forth no evidence in the record that their conduct or policy interpretation was different for any of these class members. In fact, they say the answer should be no for everyone. Every single person was denied. Most of them within 24 hours by one employee who was put in a position to deny all of these claims with form denial letters as quickly as possible without even speaking to the insured. There were no analysis of individualized factual issues. And there's no individualized issues that would prevent certification here. Speak on appendage jurisdiction. Thank you. Finally, pendent appellate jurisdiction is a very limited doctrine as you know. This court in Brown v. Nucor held that certification doesn't deal with merits issues. And in Rucks v. Republic of Sudan held that pendent jurisdiction can only be applied in very limited circumstances. Efficiency arguments like State Farm raises, the fact that the motion to dismiss opinion could dispose of the entire matter are not considered in pendent jurisdiction decisions. That's true for any motion to dismiss. Any motion to dismiss, if the district court got it wrong, it can be overturned. And it can affect the entire course of the litigation. But the rules don't allow it to be addressed on an interlocutory basis. That's done after summary judgment, after trial, after final disposition. And this court in Rucks quoted SWINT, which is a Supreme Court decision which precluded efficiency consideration saying such arguments drift away from the statutory instructions Congress has given to control the timing of appellate procedures. It said we are constrained by the language of the Supreme Court as well as our own precedent from recognizing efficiency considerations as a basis for the exercise of pendent appellate jurisdiction. Was Nucor a class action case? Nucor was a class action case. It was a racial discrimination case, yes. Okay. So your colleague on the other side raised the EQT case. And there are cases that suggest that sort of a peek at the merits is appropriate in a class certification context. And they suggest that we should do that here. Do you disagree? A peek at the merits, if those issues are fully intertwined with whether there are common predominating questions, can be done. That is correct. EQT is a very different case. There were five classes certified. They were very broad classes, not the narrow class like we have here. And what the court said was there were complicated issues as to who would be able to resolve, who would be able to receive royalties. And so the class members were not similarly situated. And so there the court found that based on that there were not common questions about the contract interpretation and whether there was breach and whether royalties were owed. We don't have that here. This is a narrow class. The policies are the same. The conduct and the uniform denial without any factual investigation is the same. All right. Thank you very much, Counsel. Thank you. Thank you, Your Honors. I think I'd just like to point out that a rhetorical question is if a case has no legal merit but is certified as a class, assuming there's no commonality issues. Tell us a way out. That's what I'm scratching my head over because it does seem like a terrible waste of time to send this case back for litigation of direct physical loss under the facts alleged that we have before us. But show us a way out. I think, Your Honors, it's just focusing on the merits analysis. And I do want to correct something on the Eighth Circuit State Farm case. There was no discussion of pendant appellate jurisdiction. But the court did on a just 23-F appeal reverse the decision and find that there was no legally viable claim to go forward. So it ended the case. It didn't just end the class. It ended the entire case. And that's what we're asking the court to do here, which Judge Keenan is right. What was the authority? It was evaluating the merits of the claim. But the issue before was only the class certification? Correct, Your Honor. How did it get to the merits? It said, as counsel pointed out, that the merits were intertwined with commonality and predominance. And it looked at the merits. Are there legally viable? That would give you a ruling on the class certification. It doesn't give you leeway then to say, well, these are the merits, and now you must do that. But it can, Your Honor. Isn't that pendant jurisdiction exercise there? You can also use pendant appellate jurisdiction, but you can look at the merits. In fact, you must look at the merits in deciding whether, even if it's a peak at the merits, not deciding the ultimate issue, but if it's a peak at the merits, is this a legally viable claim? Are there defenses? Are there affirmative defenses in order for the case to go forward? The court can do that in looking at a case under Rule 23. How conclusive need that be? I mean, even though we are looking at court with other cases there, it certainly appears to be going that way. But we are not a fact-finding court. We are not. I mean, I'm trying to understand how conclusive does it need to be. I mean, is there a junction type level that a reasonable person would say, oh, at least you can predict it? Or what? Well, Your Honor. I'm worried that if we go in that direction, what does this mean? That means every time we see one of these things, we'll be dealing with the merits. And that's something I think the courts have been very reticent to do. They do not want to do a merit analysis for class certification, particularly on appeal. Correct, Your Honor. So tell me the limiting principle that the Eighth Circuit had to keep them from having to do that again in the future. I'd just like to quote the language. It's not directly on point, but Thorne v. Jefferson pilot case, where in looking at a case on a 23-F petition, the abuse of discretion review of purely legal questions is essentially a de novo review, Your Honors. That's what you would be doing here. That you would find that a district court, by definition, abuses its discretion when it makes an error of law. What we're saying here is that the district court here made an error of law at the motion to dismiss stage, but then carried that error of law to the class certification stage. And in evaluating the case purely through a 23-F lens, the court can find that it was an error of law, that the claims are not legally viable and should not proceed. Can I follow up on this Eighth Circuit case? I did read before the argument, but it had been a little while ago. As I recall, that case had to do with replacement coverage for property insurance policy, and the question was the definition of actual cash value. And I'll just read you the sentence that the Eighth Circuit sort of, which is the gist and sum and substance of the reason why they thought it was appropriate to get to the merits. They said, if we were to conclude, as we do, that State Farm's method of determining estimated actual cash value does not breach its insurance contract, its replacement cost contract, then there is no basis to certify a class of insureds who suffered unique individual covered losses. And also, no basis to undergo discovery and all of that. That was it. They said, if the underlying premise of the policy, the legal interpretation of the policy is incorrect, and there's no basis to certify a class, we get to the merits. Yes, Your Honor. I guess we have to decide whether or not that's correct. Yes, Your Honor. And we would argue it is, and we would argue that we don't, we shouldn't be worried about a slippery slope here. This is really a unique case in a unique circumstance. But you have, but it's consistent with certainly the Supreme Court's findings in the Coopers-Lybrand case, certainly with this Court's holding in Epic, and you've got a number of other courts of appeals that have found that it is appropriate to look at the merits. That, obviously, you don't want to decide the ultimate issue, but that it is entirely consistent. In fact, the courts must look at the merits as part of the rigorous analysis. So once you, even in Eighth Circuit, procedurally is where I am with it, you have a class certification issue, you determine that the underlying merits really shouldn't even have a class, so then that says reverse the class certification. You then instruct to dismiss. You're only dismissing the initial plaintiff because you've already said that class doesn't exist. I mean, you can't do the class. So I don't see how it dismisses the action of the class. I guess you could say, well, now the court has precedent because this court has now held it to be so, but it really is dicta because you didn't have to do that. Your only question before you was to say the class shouldn't exist. I mean, that you were wrong because that's the only issue before you. And I don't understand that. I mean, the other cases that came up on a motion to dismiss, how did that happen? How did that get to the appellate court? There was a motion to dismiss in this case, too? There was, Your Honor. So how did the other motions to dismiss get to the appellate court? Because the cases were dismissed, Your Honor. I don't think they were class actions. They were individual cases. And ultimately, there was a judgment on the merits, went up on appeal. So they went the other way, and that got rid of the interlocutor appeal matter, and they came up in that matter. And when you have a case of this sort and you are allowed now to appeal, because ultimately the dismissal aspect of it will be appealed when you go to trial, you are not permitted, and I'm just asking the procedural, to ask the court to also review that since you are now reviewing this class certification. Permitted to ask the court to review the law? I'm trying to find a procedural way to make this work. And that is, it seems to be, because there are two different things. You have a motion to dismiss, it will go against you. You then have a class certification. You can appeal the class certification, and you can't ask us then to also review the dismissal motion? Was that not permitted because it's still interlocutory? We do that little dance in language with that. But you couldn't have asked? We did ask to appeal the motion to dismiss, and that was denied. And we asked for reconsideration, and that was denied. And then we were up here on the initial. So we're still at the stage, we could reconsider that even now, because we're kind of, we are who we are. Yes, your honors have great discretion, but just following up on. I'm trying to make sense out of doing it. I don't know if I like the Eighth Circuit way of doing it. And I'm trying to figure out, is it possible to do this? Because it does seem, I wouldn't say absurdity, but it does seem a tremendous waste if we believe at that point. I'm kind of going on the belief that Uncooked is just it, and that's the law. Maybe, it looks like it is, but I don't know. And your honors, I see I'm out of time, but if I could just wrap up by perhaps urging that you do exercise a pendant appellate jurisdiction if that is more appealing. You did it once before in the Scott v. Family Dollar Stores case. It was very limited, but the issues were intertwined, and you needed to reach the motion to dismiss decision or the motion to leave to amend. That was the motion to amend, though, in Family Dollar. Why isn't that a distinction? It is a distinction, Judge Keenan, but it's the underlying fact that the cases were intertwined, that in order to meaningfully decide the later issue, you had to go back to the earlier issue, and that's what we're encouraging here, is that in order to ensure meaningful review of the class certification order, you need to look at the decision on the motion to dismiss, and that's what we would encourage. Thank you very much. Thank you, Ms. Sarchio. Thank you both for your able arguments here this morning. We're going to come down, recounsel, and take a brief recess. This Honorable Court will take a brief recess.
judges: Albert Diaz, James Andrew Wynn, Barbara Milano Keenan